UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

STERLING FERGUSON and
MICHELLE FERGUSON

       Debtors.

_____/

Chapter 11 Case
Case No.: 13-28991-RBR

## FIRST AMENDED PLAN OF REORGANIZATION

Sterling Ferguson and Michelle Ferguson, as Debtors and Debtors-in-Possession in the above captioned Chapter 11 case, propose the following First Amended Plan of Reorganization (Plan or Plan of Reorganization) pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

The capitalized terms set forth below shall have the following meanings:

1.1 Administrative Claim means a Post petition Claim, whether secured or unsecured, that is entitled to priority in accordance with sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) the actual, necessary costs and expenses, incurred after the Petition Date of preserving the estate and operating the business of the Debtors (such as wages, salaries, or commissions for services rendered); (1) compensation for legal or other services and reimbursement of expenses awarded pursuant to Section 330(a) or 331 of the Bankruptcy Code; and, all fees and charges assessed against the Estates pursuant to Section 1930 of Title 28 of the United States Code.

1.2 Allowed Amount means, with respect to a particular Claim; (a) if the holder

of such Claim has not filed a proof of claim as prescribed by the Court within the applicable period of limitation fixed by the Court pursuant to Bankruptcy Rule 3003, the amount, if any, of such Claim that is Listed in the Schedule of Assets and Liabilities as being not disputed, contingent, or unliquidated; (b) if the holder of such claim has duly filed a proof of claim: (i) the amount stated in such proof of claim, if no objection to such proof of claim is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; or (ii) such amount as shall be fixed by a Final Order, if an objection is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; (iii) with respect to an Administrative Claim, such amount as shall be fixed and allowed by a Final Order. The Allowed Amount of any Secured claim shall be fixed in accordance with Section 506 of the Bankruptcy Code based on the value of the Debtors' interest in the property which is Collateral for such Claim.

1.3 <u>Allowed Claim</u> means a Claim in the specified class, if any, for which an Allowed Amount has been determined. When the context so requires, Allowed Claims include Disputed Claims to the extent such Disputed Claims become allowed after the Effective Date.

1.4 (Left Blank Intentionally)

1.5 <u>Ballot</u> means the ballot or ballots approved by order of the Court for distribution to holders of Claims in impaired Classes in connection with the solicitation of votes to accept or reject the Plan.

1.6 <u>Bankruptcy Code</u> means Title II of the United States Code, 11U.S.C. Section 131 <u>et. seq.</u>, as of the Effective Date.

1.7 <u>Bankruptcy Rule</u> means the Federal Rules of Bankruptcy Procedure and the local rules of the court (Including any applicable local rules of the United States District Court for the Southern District of Florida), as of the Effective Date.

1.8 <u>Business day</u> means any day except a Saturday, Sunday, or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

1.9 (Left Blank intentionally)

1.10 <u>Claim</u> means any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, mature, unmatured, disputed, secured or unsecured.

1.11 <u>Confirmation Date</u> means the date the clerk of the Court enters the Confirmation Order on the docket.

1.12 <u>Confirmation Order</u> means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.13 (Left Blank Intentionally)

1.14 <u>Court</u> means the United States Bankruptcy Court for the Southern District of Florida, or any other bankruptcy court exercising competent jurisdiction over this reorganization case. .

1.15 <u>Debtors</u> mean Sterling Ferguson and Michelle Ferguson, as debtors and debtors-in-possession in their Reorganization Case.

1.16 <u>Disbursing Agent</u> means the entity or entities designated by the Debtors,

with the approval of the Court (which approval may be set forth in the Confirmation Order), to make distributions pursuant to this Plan. Nothing herein shall preclude the Reorganized Debtors from being designated as the Disbursing Agent.

1.17 <u>Disclosure Statement</u> means the First Amended Disclosure Statement that relates to this Plan as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all- appendices, exhibits, and schedules annexed thereto or referred to therein).

1.18 <u>Disputed Claim</u> means a Claim that is not an Allowed Claim if: (a) no proof of claim has been filed with the Court, or deemed so filed under applicable law or order of the Court; (b) an objection has been or may be timely filed; or (c) the Claim has been denied in whole or part by a Final Order, or granted in whole or part by a Final Order.

1.19 <u>Distribution</u> means any distribution, delivery, or issuance of Cash, notes, securities, instruments, or assets, under the Plan to any Holder of a Claim.

1.20 <u>Distribution Address</u> means the address set forth in the relevant proof of claim. If no proof of claim is filed In respect of a particular Claim, such term means the address set forth in the Debtors' Schedules.

1.21 <u>Effective Date</u> means the First Business Day which is 30 calendar days after the date the Confirmation Order is final.

1.22 <u>Executory contract</u> means any executory contract or unexpired lease, subject to Section 365 of the Bankruptcy Code, between any Debtors and any other Person or Persons, specifically excluding all of the contracts and agreements entered into pursuant to this Plan.

1.23 <u>Final Order</u> means an Order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.24 <u>Impaired</u> means any Claim which, under the Plan, is not treated pursuant to Bankruptcy Code section 1124(1) or (2).

1.25 <u>Person</u> means any individual, corporation, general partnership, limited partnership, association, joint stock Company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.26 <u>Petition Date</u> means August 9, 2013.

1.27 <u>Plan</u> means this First Amended Plan of Reorganization, dated September 18, 2014 and all exhibits hereto, together with any amendments or modifications thereof.

1.28 <u>Post petition</u> means arising or accruing after the Petition Date and before the Effective Date.

1.29 <u>Prepetition</u> means arising or accruing prior to the Petition Date.

1.30 <u>Priority Claim</u> means any Prepetition Unsecured Claim against the Debtors, other than a Priority Tax Claim, which is entitled to priority in accordance with Section 507 of the Bankruptcy Code.

1.31 <u>Priority Tax Claim</u> means a Prepetition unsecured Claim against the

Debtors for Taxes owed which are entitled to priority in accordance with Section 507(a)(8) of the Bankruptcy Code.

1.32 Reorganized Debtor means the Debtors on and after the Effective Date.

1.33 (Left Blank Intentionally)

1.34 Secured Clam means a Prepetition Claim against the Debtors that is collateralized by a security interest in or lien, mortgage, or other encumbrance on, any right, title, or interest of the Debtors in and to property of the estate or that is subject to offset under Section 553 of the Bankruptcy Code, the amount of which shall be determined in accordance with Sections 506 and 1111 (b) of the Bankruptcy Code.

1.35 Stipulation means an agreement between the Debtors and the Holder of a Claim.

1.36 Subsequently Allowed Claim means any Claim for which an Allowed Amount is fixed after the Effective Date.

1.37 Taxes means all taxes, charges, fees, levies, imposts, or other assessments by any federal, state, local, or foreign taxing authority including without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated severance, stamp, occupation, and withholding taxes. Such term shall include any interest, penalties, or additions attributable to, imposed on, or with respect to such assessments.

1.38 (Left Blank Intentionally)

1.39 Unclaimed Property means any Cash unclaimed-on or after the applicable Initial Distribution Date or date on which an Additional Annual Distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property

shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a property forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available.

1.40 (Left Blank Intentionally)

1.41 Unimpaired means any Claim or Interest which is not impaired under the Plan.

1.42 Value means in respect of any property of the Debtors constituting Collateral for any Secured Claim, the value of any such property as shall be determined by the Court or by Stipulation.

1.43 Voting Deadline means the last day to vote to accept or reject the Plan as fixed by order of the Bankruptcy Court.

1.44 As used in the Plan, a masculine pronoun shall be deemed to include the feminine and neuter, and all terms used in the singular shall be deemed to include the plural and vice versa.

1.45 (Left Blank Intentionally)

1.46 Whenever, it appears appropriate from the context, each term state in the singular or the plural include the singular and the plural.

1.47 Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code or the Bankruptcy Rules if use therein.

1.48 Captions and Headings to Articles and Sections of the Plan are inserted for convenience or reference only and are not intended to be a part or to affect the

interpretation of the Plan.

1.49 The Rules of Construction set forth in Section 102 or the Bankruptcy Code shall apply, unless superseded herein or in the confirmation Order.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND TREATMENT

2.1 General Rule for Classification.

The following is a designation of the Groups and Classes of Claims and the Treatment thereof under this Plan.

2.2 Classification of Claims and Interest.

**Pursuant to 11 U.S.C. §1141(d)(5) Debtors will not receive a discharge until completion of all payments under the plan. If Debtors completes all plan payments, Debtors' debts shall be discharged**.

1.        Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtors shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to Class 2 creditors.  Upon the satisfaction of all payments required under the Plan to Class 2 creditors, the Reorganized Debtors shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

2.        Notwithstanding the above, the Debtors may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

a.   The Debtors may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Class 2 creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

b.   The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

c.   During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, that being August 9, 2013, as long as the Debtors continues to be in compliance  with the Plan and the Court's Order Confirming Debtors' Plan of Reorganization and Setting Bar Date for Lease and Executor Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtors timely makes all of the payments to Class 2 creditors, as contemplated under the Plan.

d.   Upon the satisfaction of all payments required under the Plan to Class 2 creditors, the Debtors may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtors have made all of the payments contemplated under the Plan to Class 2 creditors.

e.   Upon the re-opening of this bankruptcy proceeding, the Debtors shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Class 12 creditors have been made. The Court may then grant the Debtors a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Reservation of Rights Under Sections 1141(d)(5) and 350(a). The Debtors reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid pursuant to the Plan to Class 2, the Debtors may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtors a discharge, pursuant to 11 U.S.C. §

1141(d)(5). <u>This paragraph only preserves the Debtors' right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtors after confirmation.</u>

The following briefly summaries the classification and treatment of Claims under the Plan.

### Group 1 Administrative Expense Claims

100% Payment:

Composition: All Claims allowed by the Court pursuant to 11U.S.C. Section 503 and 507(a)(1). The Debtors estimates that there will be no Administrative Expense Claim. No party has made a claim for Administrative Expenses.

Treatment: Each holder of an Allowed Administrative claim shall be paid 100% of its Allowed Claim upon the Effective Date of Confirmation of the Plan of Reorganization or as otherwise agreed between the holder of the administrative claim and the Debtors. All Fee Requests shall be filed no later than 30 days after the Confirmation Date or such other date as established by the Court.

**Unimpaired**: Administrative Expense Claims are **Unimpaired** under the Plan.

### Group 2 Priority Claims:

### 2-A Priority Non-Tax Claims

100% Payment: Each Holder of an Allowed Priority Non-tax Claim shall be paid 100% of its Allowed Claim. The Debtors estimates of Priority Non-tax Claims at five thousand four hundred sixteen and fifty six cents ($5,416.56).

Treatment: Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction of such Claim, an amount of cash equal to 100% of the amount of

such claim within 15 days of the Effective Date, or within 15 days of the allowance of such Claim, by a Final Order, whichever is later, or as soon as practicable thereafter unless such Holder agrees to a different treatment of its Claim. Claimant in its claim 16-1 requested to be paid at a rate of $60.00 per month until the balance is paid in full. Debtors propose paying the claim at $100.00 per month until the claim is paid in full.  Payment shall be made payable and sent to: Attention Bankruptcy Unit, P.O. Box 6668, Tallahassee, Florida 32314.

Priority non-tax claims are **unimpaired**.

## 2-B Priority Tax Claims

Pursuant to 11 U.S.C. §507(a)(8) governmental income taxes are chronologically given eighth priority in claim preferences.  This claim preference is allowed only to the extent that:

> i)     The tax on income is for a taxable year ending on or before the date of the filing of the petition;
> ii)    The tax return is due after three years before the petition date; and
> iii)   The tax is assessed within 240 days before the date of the filing of the petition (exclusive of the time an offer in compromise in pending plus 30 days, or a stay is pending, plus 90 days).
> iv)    The tax not assessed before but assessable post-petition.

Each Holder of an Allowed Priority Tax Claim (Internal Revenue Service) shall be paid 100% of its Allowed Priority Claim. All Claims allowed by the court pursuant to 11 U.S.C. Section 507(a) (8). The Debtors estimates the amount of Priority Tax Claims to be less than $20,000.00 after adjustments.

Treatment: Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such claim, at the option and sole discretion of the Debtors, either: (1)

an amount in cash equal to the Allowed Amount of such claim (or any portion thereof), payable as soon as practicable after the Effective Date; or (ii) equal cash payments, paid in equal monthly payments over a period not to exceed five (5) years from the Order for Relief plus simple interest on any outstanding balance from the effective Date at the deficiency rate as determined under I.R.C. Section 6621(c) (3), as amended, for underpayments other than large corporate underpayments, as defined therein, or on such other terms as the Holder of the priority Tax Claims may agree.  Priority Tax Claims are **unimpaired**.

## SECURED CLAIMS - CLASS 1 -

### Class 1A Secured Claim of Bank of America, N.A., – 760 N.W. 70th Street, Miami, Florida 33150- First Mortgage

The Debtors or their predecessor in interest gave Bank of America a mortgage to secure the payment of the promissory note executed by Debtors or their predecessor in interest. The mortgage is in first priority position on the real property located at 760 N.W. 70th Street, Miami, Florida 33150, the Debtors' investment property.

Bank of America has not filed a proof of claim.  Debtors filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 11.  On September 18, 2013 the Court entered on order granting Debtors' Motion to Value, DE 38.  The property has a value of $93,776.00.   Bank of America's claim is secured to the extent of $93,776.00.

Treatment: Bank of America's claim is secured to the extent of $93,776.00. Beginning with the first payment due within 30 days of entry of the confirmation order, Debtors shall pay principal and interest payments for one hundred twenty [120]

months amortized at an interest rate of 5.25% for a monthly payment of $1,006.14 per month. The cram down portion shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Bank of America shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

### Class 1B Secured Claim of Bank of America, N.A. – 6920 N.W. 4th Avenue, Miami, Florida 33150 – First Mortgage

The Debtors or their predecessor in interest gave Bank of America a mortgage to secure the payment of the promissory note executed by Debtors or their predecessor in interest. The mortgage is in first priority position on the real property located at 6920 N.W. 4th Avenue, Miami, Florida 33150, the Debtors' investment property.

Bank of America has not filed a proof of claim. Debtors filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 12. On September 18, 2013 the Court entered on order granting Debtors' Motion to Value, DE 39. The property has a value of $98,830.00. Bank of America's claim is secured to the extent of $98,830.00.

Treatment: Bank of America's claim is secured to the extent of $98,830.00. Beginning with the first payment due within 30 days of entry of the confirmation order, Debtors shall pay principal and interest payments for one hundred twenty [120]

months amortized at an interest rate of 5.25% for a monthly payment of $1,060.36 per month. The cram down portion shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Bank of America shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

### Class 1C Secured Claim of Bank of America, N.A., – 560 S. Park Road, Apt., 24-7, Hollywood, Florida 33021 – First Mortgage

The Debtors or their predecessor in interest gave Bank of America a mortgage to secure the payment of the promissory note executed by Debtors or their predecessor in interest. The mortgage is in first priority position on the real property located at 560 S. Park Road, Apt., 24-7, Hollywood, Florida 33021, the Debtors' investment property.

Bank of America did not file a proof of claim; Debtors filed a proof of claim on behalf of Bank of America. Debtors filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 13. On September 18, 2013 the Court entered an order granting Debtors' Motion to Value, DE 40. The property has a value of $90,100.00. Bank of America's claim is secured to the extent of $90,100.00. On September 11, 2014 Bank of America filed a Notice of Election by Class 1C Pursuant to §1111(b)(2). *See* DE 74.

A creditor making a Section 1111(b)(2) election retains full security interest in

the underlying asset and has the right to receive payment in full over time for the face amount of its claim. Under a Section 1111(b)(2) election, the present value of the payments to be received in satisfaction of the claim is required to equal the value of the creditor's interest in the collateral as of the effective date of the plan of reorganization. The Section 1111(b)(2) election requires that when property securing a claim is retained, the class making the claim receives payments over time that **both** total the amount of the claim allowed by the Court [$228,094.74] and have a **present value** on the effective date of the plan **equal to or greater than** the value of the claimant's lien [$90,100.00]. Expressed as an equation, the formula is as follows:

$$PV = FV \; \frac{1}{(1 + r)n}$$

PV = Present Value
FV = Future Value
r  = Rate of Return
n = Period

The subject mortgage has a maturity date of November 1, 2037 pursuant to the mortgage. *See* Claim 23-1. Therefore the number of period until maturity is 23 years.

Treatment: Beginning on the effective date of the plan, Debtor shall pay principal and interest payments for two hundred seventy six [276] months wherein both the present value and future value are calculated so that payment received over time **both** total the amount of the claim allowed by the Court [$228,094.74] and have a **present value** on the effective date of the plan **equal to or greater than** the value of the claimant's lien [$90,100.00]. Under the section 1111(b)(2) election the monthly payment shall be $826.43 per month.  Section 1111(b)(2) election payment is expressed as:

$$PV = FV \; \frac{1}{(1 + r)n}$$

or

$$90,100 = 288,094.74 \; \frac{1}{(1 + 3.1\%)^{276}}$$

With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtor may retain property included in the estate under section 1115.   This claim is **partially impaired**.


**Class 1D Secured Claim of Bank of New York Mellon, – 3240 N.W. 178th Street, Miami, Florida 33056 – First Mortgage**

The Debtors or their predecessor in interest gave Bank of New York Mellon a mortgage to secure the payment of the promissory note executed by Debtors or their predecessor in interest. The mortgage is in first priority position on the real property located at 3240 N.W. 178th Street, Miami, Florida 33056, the Debtors' investment property.

Bank of New York Mellon has not filed a proof of claim.  Debtors filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 14.   On September 18, 2013 the Court entered on order granting Debtors' Motion to Value, DE 41. The property has a value of $96,927.00. Bank of America's claim is secured to the extent of $96,927.00.

Treatment: Bank of New York Mellon's claim is secured to the extent of

$96,927.00. Beginning with the first payment due within 30 days of entry of the confirmation order, Debtors shall pay principal and interest payments for one hundred twenty [120] months amortized at an interest rate of 5.25% for a monthly payment of $1,039.95 per month. The cram down portion shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Bank of New York Mellon shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

## Class 1E Secured Claim of Equity Capital Lending Partners I, LLC – 5140 N.W. 12th Avenue, Miami, Florida 33127– First Mortgage

The Debtors or their predecessor in interest gave Equity Capital Lending Partners I, LLC, a mortgage to secure the payment of the promissory note executed by Debtors or their predecessor in interest. The mortgage is in first priority position on the real property located at 5140 N.W. 12th Avenue, Miami, Florida 33127, the Debtors' investment property.

Debtors filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 10. On October 16, 2013 the Court entered on order granting Debtors' Motion to Value, DE 49. The property has a value of $105,000.00. Equity Capital Lending Partners I, LLC's claim is secured to the extent of $105,000.00.

Treatment: Equity Capital Lending Partners I, LLC's claim is secured to the extent of $105,000.00 and unsecured to the extent of $80,000.00. Beginning with

the payment due December 1, 2013 Debtors shall pay $1,178.94 in principal and interest based on the agreed value in the amount of $105,000.00 amortized at 6.25% over the course of 120 months. Debtors shall also pay 246.96 per month for real estate taxes for a total monthly payment of principal, interest, and taxes in the amount of $1,425.90. The loan shall balloon in month forty eight {48} at which time the outstanding principal balance is due in full. The cram down portion of $80,000.00 shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Equity Capital Lending Partners I, LLC shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

**Class 1F Secured Claim of Miami-Dade County Tax Collector- Ad Valorem Taxes**

Class 1F consists of the Miami-Dade County Tax Collector's secured claim for ad valorem taxes for 2013 and prior years in the estimated amount of $12,394.92, plus applicable statutory interest. The claimant holds first priority statutory liens on the Debtors' interest in their real and personal property and will retain such liens after the Effective Date of the Plan until the claim is paid in full. The Tax Collector's Claim is an Allowed Secured Claim and shall be paid in full by means of: (1) payment of the ad valorem taxes owed for tax year 2012 to be made within sixty (60) days after the date on which the order entered by this Court confirming the Plan has become final and non-appealable (the "Final Confirmation Order"); (2) payment of the ad valorem

taxes owed for tax year 2013 to be made no later than June 30, 2014; and (3) payment of ad valorem taxes owed for tax years 2014 and future taxes, plus applicable statutory interest, to be paid in the ordinary course pursuant to Florida law. The Tax Collector's Claim is unimpaired and shall be entitled to vote to accept or reject the Plan. In the event there is an administrative challenge to the Miami-Dade County Property Appraiser's assessment of the Debtors' real property for the 2012 or 2013 tax year, the Debtors' tax liability for the 2012 or 2013 tax year would be subject to revision upon final determination of the administrative challenges. The determination of any challenge will not be considered final until such time as the Property Appraiser determines that any administrative reductions will not be further challenged by his office or, if such reductions are challenged, the litigation has been concluded, including any appeals there from. Until such time as final determinations are made with respect to any such assessment challenges, the claim of the Tax Collector, and any further payments made with respect thereto, will be based upon the tax amounts owed with respect to the original assessments, and any refunds resulting from administrative reductions will be held by the Tax Collector until final disposition is determined. Should refunds be determined to be owed, they will be sent to the party making the original tax payment. Any increases in assessments shall are subject to applicable statutory interest. Notwithstanding any language to the contrary in the Debtors' plan of reorganization, the Tax Collector will not be required to petition for the payment of ad valorem taxes for the 2014 tax year and subsequent years.

This claim is un**impaired**.

## GENERAL UNSECURED CLAIMS- CLASS 2 -

The general unsecured claims of the Debtors who have filed Proof of Claims are as follows:

| Claim Number | Creditor | Amount |
|---|---|---|
| 2-1 | Advantage Assets II, Inc. | $27,082.12 |
| 3-1 | Asset Acceptance, LLC | $29,440.31 |
| 4-1 | Asset Acceptance, LLC | $15,743.16 |
| 5-1 | Real Time Resolutions, Inc. | $293,226.45 |
| 6-1 | Nelnet | $10,372.72 |
| 7-1 | Bluegreen Corp | $11,717.47 |
| 8-1 | Bluegreen Corp | $4,405.80 |
| 9-1 | Cavalry SPV I, LLC | $10,752.55 |
| 10-1 | Sprint Nextel | $6,322.96 |
| 11-1 | Wells Fargo Bank, N.A. | $93,620.88 |
| 13-1 | Quantum3 Group, LLC | $565.90 |
| 14-1 | American Express Centurion Bank | $12,195.27 |
| 15-1 | American Express Bank, FSB | $18,511.00 |
| 17-1 | LVNV Funding, LLC | $20,210.33 |
| 18-1 | LVNV Funding, LLC | $54,073.96 |
| 19-1 | LVNV Funding, LLC | $230.51 |
| 20-1 | LVNV Funding, LLC | $344.10 |
| 21-1 | LVNV Funding, LLC | $4,423.41 |
| 22-1 | Real Time Resolutions, Inc. | $267,719.14 |
| | Equity Capital Lending Partners I, LLC | $80,000.00 |

| | | |
|---|---|---|
| Total | | ==========<br>$956,534.63 |

The amount proposed to be paid to the unsecured claims is $5,000.00. Pursuant to 11 U.S.C. §1129(a)(15) a creditor can object to the confirmation of the Plan because the value of the property to be distributed under the plan is not less than the projected disposable income of the Debtors (as defined in section 1325(b)(2)) to be received during the 5-year period. Debtors have disposable income to pay unsecured claims and Debtors have elected to pay $5,000.00 which is not a substantial distribution of these claims.

The Debtors will pay the general unsecured creditors the total sum of

$5,000.00 without interest in equal monthly payments of $100.00 for 50 months which will be disbursed to the general unsecured creditor pro-rata until they are paid in accordance with this Plan. The Debtors estimate it will take 50 months until these claims are paid in accordance with this Plan. Payments will begin 30 days from the Effective Date of the Plan of Reorganization. If Debtors completes all plan payments, Debtors' debts shall be discharged.  This class is **impaired**.

## UNITED STATES TRUSTEE FEES

Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the United States Trustee the appropriate fee required pursuant to 28 U.S.C. §1930(a)(6) within ten (10) days of the entry of the order confirming the Plan for pre-confirmation periods, and Debtors shall file pre-confirmation monthly operating reports, indicating the income and disbursements for the applicable period(s). Debtors, as Reorganized Debtors, shall further pay the United States Trustee the appropriate fee required pursuant to 28 U.S.C. §1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6) and all post-confirmation disbursements made by Reorganized Debtors, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code. Reorganized Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating Reports indicating all the cash disbursements for the relevant period, including, among other things, all payments made under the Plan and all

payments made in the Ordinary Course of Business.

## ARTICLE III

3.1 Funding. The Cash necessary to make the Cash payments required hereunder to be made as of the Effective Date to Holders of Allowed claims will be provided from any cash generated during the Chapter 11 case and income generated by the Reorganized Debtors, except as otherwise provided herein.

3.2 Retention of Property. The Debtors shall retain all of their properties other than that property disposed of during the Chapter II case and disposed of pursuant to this Plan.

3.3 Satisfaction of Claims. All claims of creditors shall be satisfied solely in accordance with the Plan. On and after the Effective Date, the assets of the Debtors shall be free and clear of all claims of creditors arising prior to the Effective Date except as specifically provided for in the Plan or the Confirmation Order.

3.4 Disbursing Agent. The Reorganized Debtors or their attorneys shall act as the Disbursing Agent.

## ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1 Assumption and Rejection. As of the Effective Date and effective as of the Petition Date, all executory contracts and unexpired leases of the Debtors shall be rejected by the Debtors pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code. Any executory contract or lease assumed by the Debtors under the Plan shall be deemed assigned, to the extent necessary, to the Reorganized Debtors as of the Effective Date.

4.2 Cure. At the election of the Debtors or the Reorganized Debtors, as the

case may be, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to Section 355(b) (1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.

## ARTICLE V
## DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

5.1    Distributions Generally.

5.1.1. Holders Entitled. Distributions of property under the Plan shall be made only to Holders of Allowed Claims and pursuant to Section 5.1.5 hereof. Holders of Disputed Claims shall not be entitled to receive any distribution unless and until their Disputed claims shall become Allowed Claims, and then, only to the extent so Allowed.

5.1.2. Timing. Subject to the provisions of Section 5.1.10 hereof, Distributions required to be made under this Plan shall be made either (i) on or within 5 days after the Effective Date if to be made in respect of an Allowed Claim as of such Date, or (ii) otherwise, on or prior to the first Business Day following the day 30 days after such Claim becomes an Allowed Claim by Final Order as the case may be.      -

5.1.3 Method of cash Distributions. Any Cash payment to be made pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required or provided under any relevant agreement or applicable law.

5.1.4 Distributions on Non-Business Days. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

5.1.5 <u>No Distribution in Excess of Allowed Amount of Claim</u>. No Holder of an Allowed claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

5.1.6 <u>Disputed Payments</u>. If any dispute arises as to the identity of a Holder of an Allowed claim who is to receive any distribution, the Reorganized Debtors may, in lieu of making such Distribution to such person, make such Distribution into an escrow account until the disposition thereof shall be determined by a Final Order from the Court or by Stipulation among the interested parties to such dispute.

5.1.7 <u>Distributions to Holders of Allowed Claims on the Effective Date</u>. On the applicable Effective Date (initial Distribution Date), the Reorganized Debtors shall make a Distribution of Cash to: (I) each Holder of an Allowed Claim in an amount equal to its pro Rata Share of the Cash allocated to the relevant Class.

5.2.1 <u>Distributions to Holders of Subsequently Allowed Claims</u>.  Upon the resolution of the dispute in respect of such Claim whether by Final Order or otherwise, (i) to the extent that such Disputed Claim has become an Allowed Claim, distributions in respect thereof shall include a Pro Rata Share of the subsequent payments made by the Reorganized Debtors.

5.3 <u>Unclaimed Distributions</u>. Unclaimed distributions shall become property of the Reorganized Debtors within 30 days of return of the funds and without claim from any party.

## ARTICLE VI
## DISPUTED CLAIMS
## SUBSEQUENTLY ALLOWED ADMINISTRATIVE EXPENSES

6.1 <u>Objections to Claims</u>.

6.1.1 <u>Time to Object</u>. Unless an earlier or later date is established by the court, all objections to Claims shall be filed with the court and served on the Holders of the Claims to which a party has an objection by the later of: (1) 120 days after the Effective Date: or (2) 60 days after a particular proof of claim is filed with the Court. If an objection to any Claim is not timely filed by the bar dates established in this paragraph, such Claim shall be treated as an Allowed Claim if such Claim has not been disallowed earlier. Any Claim which is allowed under the provisions of this Plan shall be an Allowed claim and not subject to objections by any Person, including the Debtors.

6.1.2 <u>Authority to Prosecute</u>. After the Effective Date, only the Reorganized Debtors shall have the authority to file objections, estimate claims, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims provided.

6.1.3 <u>Amendment of Claims</u>. A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the Holder of such Claim or as otherwise permitted by the Court, Bankruptcy Rules, or other applicable law. After the Confirmation Date, a Claim may be amended to decrease but not increase the Face Amount thereof.

## ARTICLE VII
## EFFECT OF THE PLAN ON THE RIGHTS
## OF CREDITORS, THE DEBTORS AND OTHERS

7.1 <u>Discharge of the Debtors</u>.

7.1.1 <u>Scope</u>. Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1141(d)(5) of the Bankruptcy Code, entry of the Confirmation Order does not act as a discharge effective as of the Effective Date of all debts of Claims against liens on their assets, or properties, which debts, Claims, liens, and interests arose at any time before the entry of the Confirmation Order.

7.1.2 <u>Revesting and Vesting</u>. Except as otherwise provided expressly in this Plan, on the Effective Date, following the Effective Time all property comprising the Estate of the Debtors shall revest in the Reorganized Debtors and shall become property of the Reorganized Debtors free and clear of all Claims, liens, charges, encumbrances, and interests of creditors (other than expressly provided in this Plan) As of the Effective Date, the Reorganized Debtors shall operate their businesses and use, acquire and dispose of property, settle and compromise Clams without supervision of the Court free of any restrictions of the Bankruptcy Code or Bankruptcy Rues, other than those restrictions expressly imposed by the Plan and Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay any charges it incurs after the Effective Date for professional fees, disbursements, expenses, or related support services without any application to the Court.

7.3 <u>Retention and Enforcement of Claims and Causes of Action</u>.

7.3.1 Except as otherwise provided expressly in this Plan, including, without

limitation, subsection (b) below, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Court, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any claims, rights, and causes of action that the Debtors or Estates may hold, including without limitation, any claims, rights, or causes of action under Sections 544 through 550, inclusive, of the Bankruptcy Code or any other applicable law. Debtors may pursue any such claims, rights and causes of action in accordance with what it determines to be in its best interests.

7.3.2 As of the Effective Date, the Reorganized Debtors shall waive and release any and all avoidance actions under Bankruptcy Code Sections 544 through 550 against Holders of Secured Claims.

## ARTICLE VIII
## MODIFICATION OF THE PLAN AND CONFIRMATION OVER OBJECTION

8.1 Modification of the Plan.

8.1.1 Preconfirmation Amendment. The Debtors may amend or modify this Plan at any time prior to the Confirmation Date upon notice to those creditors whose interests may be adversely affected by such amendment or modification and with the approval of the Court. The confirmation hearing may be continued from time to time. No notice of any such continuance will be provided other than notice at the hearing and any continued hearing to those attendance.

8.1.2 Postconfirmation Amendment Not Requiring Resolicitation.  After the entry of the Confirmation Order, the Debtors may modify the plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of

the Plan, provided that (i) the Debtors obtain approval of the court for such modification, after notice and a hearing; and (ii) such modification shall not materially or adversely affect the interest, rights, treatment, or distributions of any Class of Allowed Claims or Allowed Interests under the Plan. Any waiver under section 9.1.4 hereof shall not be considered to be a modification of this Plan.

8.1.3    <u>Postconfirmation/Preconsummation    Amendment    Requiring Resolicitation</u>. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially or adversely affects the interest, rights, treatment, or distributions of a Class of Claims, provided that (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least 2/3 in amount, and more than ½ in number, of Allowed Claims voting in each Class adversely affected by such modification; and (iv) the Debtors comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

8.1.4 <u>Consent Required</u>. This Plan may not be altered, amended, or modified without the written consent of each of the Debtors.

8.2 <u>Request for Confirmation Over Objection</u>.  In the event any Class of Claims votes against the Plan, the Debtors hereby request, and shall be allowed, to modify the terms of this Plan to effect a "cramdown" on such dissenting Class by (i) restructuring the terms of any Reorganization Security to be issued pursuant to the Plan on Terms consistent with Section 1129(b) (2) (A) of the Bankruptcy Code, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code.

The Debtors may make such modifications or amendments to this Plan and such modifications or amendments shall be filed with the Court and served on all parties in interest entitled to receive notice of the hearing on the confirmation of this Plan the later of (a) at least 10 days prior to such hearing and (b) five days following the Voting Deadline. No such modifications shall require any reconciliation of acceptances as to the Plan by any Class of Claim or Interests unless the Court shall require otherwise.

## ARTICLE IX
## CONDITIONS TO EFFECTIVENESS

9.1 <u>Conditions to Effectiveness</u>. This Plan shall not become effective unless each of the conditions set forth below is satisfied or otherwise waived in accordance with the provisions of Section 9.2 hereof.

9.1.1 The Confirmation order shall have been entered confirming the Plan and shall have become a Final Order and consummation of the Plan shall not be precluded by any Order, stay, or injunction of a court of competent jurisdiction nor shall there be pending a suit or appeal challenging the Plan or any transaction related to consummation of the Plan, which, in the reasonable opinion of the Debtors, would have a material adverse effect of the business, properties, condition (financial or otherwise); provided, however, that the Debtors may jointly elect to cause the Plan to become effective notwithstanding any appeal from the Confirmation Order so long as no order has been entered by a court of competent jurisdiction staying the effectiveness of the Confirmation Order.

9.1.2 All contracts and unexpired leases assumed pursuant to this Plan shall have been assured by the Debtors in accordance with Section 365 or Section

1123(b) (2) of the Bankruptcy Code.

9.1.3 All necessary consents of all entities, if any, who are parties to executory contracts or unexpired leases to be assumed pursuant to this Plan or which were entered into by the Debtors after the date of commencement of the Bankruptcy Case shall have been obtained, except to the extent that any failure to so continue would not have a material adverse effect upon the business or properties of the Debtors taken as a whole; or

9.1.4 The Allowed Amount of all Secured Claims has been determined by a Final Order or by Stipulation as set forth under Article 11 hereof.

9.2 Waiver of Conditions to Confirmation and Consummation.  Each of the conditions to effectiveness or consummation of this Plan or the occurrence of the Confirmation Date or the Effective Date is for the sole benefit of the Debtors. Except with respect to the conditions set forth in Section 9.1 hereof, to the extent that it requires entry of Final Order by the Bankruptcy Court, the requirement that any condition be satisfied may be waived in whole or part, by the Debtors, in their sole discretion, without notice and a hearing. The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including without limitation, any act, action, failure to act or inaction by the debtors). Any failure by the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1 Retention of Jurisdiction. Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Court shall retain jurisdiction over the Reorganization Case through and after the closing of the case as to all matters, including but not limited to, those matters specifically set forth in this Article X. Prior to the entry of a final decree of the Court pursuant to Bankruptcy Rule 3022, the Court shall retain jurisdiction:

10.1.1 over all Claims against the Debtors;

10.1.2 to determine the allowability of Claims and Interests upon objection to such Claims or Interests;

10.1.3 to determine any tax liability pursuant to Section 505 of the Bankruptcy Code;

10.1.4 to adjudicate any dispute under any executory lease or other contract assumed during the Reorganization Cases pursuant to Section 355 of the Bankruptcy Code, and to resolve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtors;

10.1.5 to resolve controversies and disputes regarding the interpretation of this Plan, including the determination of the priorities of distribution required by Article VII hereof;

10.1.6 to implement the provisions of this Plan and enter orders in aid of confirmation and consummation of this Plan, including without limitation, appropriate orders to enforce the right, title, and powers of the Debtors hereunder;

10.1.7 to determine classification, voting, treatment, allowance, estimation, withdrawal, disallowance or reconsideration of Claims and interests and any objection relating thereto;

10.1.8 to fix, liquidate, or estimate Claims;

10.1.9 to modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

10.1.10 to correct any defect, to cure any mistake or omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of this Plan;

10.1.11 to adjudicate any causes of action that arose prior to the Confirmation Date or in connection with the implementation of this Plan, including avoidance actions, brought by the Debtors or the Reorganized Debtors as the representative of the Debtors' estates or party in interest (as a representative of the Debtors' estate);

10.1.12 to resolve disputes concerning any Disputed Claims Reserve or the administration thereof and disputes concerning distributions;

10.1.13 to resolve any disputes concerning whether a person or entity had sufficient notice of the Reorganization Case, the applicable Claims bar date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of this Plan for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

10.1.14 to order the removal, pursuant to Section 1452 of Title 28 of the United States Code, of any suit instituted against the Debtors, the Estate, or the Reorganized Debtors and to hear and determine any action so removed;

10.1.15 to enter such orders as are necessary or appropriate to carry out the

provisions of the Plan;

10.1.16 to enter a Final Order closing the Reorganization Case; and

10.1.17 to hear and determine such other matter as may be provided for under Title 28 or any other title of the United States Code and any reference to the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, this Plan or the Confirmation Order.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1 <u>Governing law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Plan shall be governed by the laws of the State of Florida, without giving effect to any principles of conflicts of law contained therein.

11.2 <u>Effectuating Documents and Further Transactions</u>.   The Debtors, following the Effective Date, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan. Specifically, prior to the Effective Date, the Debtors are authorized to execute and deliver such documents, and take such other actions, as may be required under the Plan.

11.3 <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall

inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

11.4 <u>Confirmation Order and Plan Control</u>. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtors and any third party concerning the Plan, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Court) shall be construed together and consistent with the terms of the Plan. In the case of any conflict between the terms of (1) the Plan and construed together therewith, the Confirmation Order and (2) the terms or conditions of any of the loan documents underlying a Secured Claim in respect of which a Reorganization Security is issued under the Plan, which are incorporated therein by reference, such conflict shall be resolved by according relative priority and control to the Confirmation Order and Plan, construed together.

Dated: September 18, 2014.

__/s/ Sterling Ferguson_____
Sterling Ferguson

__/s/ Michelle Ferguson_____
Michelle Ferguson